IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MYLINH NGUYEN, | : |
| | : Case No. _____ |
| Plaintiff, | : |
| | : JURY TRIAL DEMANDED |
| v. | : |
| | : **COMPLAINT FOR VIOLATION OF** |
| IHS MARKIT LTD., LANCE UGGLA, | : **SECTIONS 14(a) AND 20(a) OF THE** |
| JOHN BROWNE, DINYAR S. DEVITRE, | : **SECURITIES EXCHANGE ACT OF 1934** |
| RUANN F. ERNST, JACQUES ESCULIER, | : |
| WILLIAM E. FORD, NICOLETTA | : |
| GIADROSSI, GAY HUEY EVANS, | : |
| ROBERT P. KELLY, DEBORAH DOYLE | : |
| MCWHINNEY, JEAN-PAUL L. | : |
| MONTUPET, DEBORAH ORIDA, JAMES | : |
| A. ROSENTHAL, S&P GLOBAL INC., and | : |
| SAPPHIRE SUBSIDIARY, LTD., | : |
| | : |
| Defendants. | : |

Plaintiff, by the undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to plaintiff, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF ACTION**

1.      On November 29, 2020, IHS Markit Ltd. ("IHS Markit" or the "Company") entered into an agreement (the "Merger Agreement") be acquired by S&P Global Inc. ("S&P Global") and Sapphire Subsidiary, Ltd. ("Merger Sub") (the "Proposed Merger").

2.      Under the terms of the Merger Agreement, IHS Markit's stockholders will receive 0.2838 shares of S&P Global common stock per share.

3.      On January 22, 2021, defendants filed a prospectus (the "424B3") with the U.S. Securities and Exchange Commission ("SEC").

4. As alleged below, the 424B3 omits material information regarding the Proposed Merger, and defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the Exchange Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is and has been continuously throughout all relevant times the owner of IHS Markit common stock.

9. Defendant IHS Markit is a Bermuda company. IHS Markit's common stock is traded on the NYSE under the ticker symbol "INFO."

10. Defendant Lance Uggla is Chief Executive Officer and Chairman of the Board of Directors (the "Board") of IHS Markit.

11. Defendant John Browne is a member of the Board.

12. Defendant Dinyar S. DeVitre is a member of the Board.

13. Defendant Ruann F. Ernst is a member of the Board.

14. Defendant Jacques Esculier is a member of the Board.

15. Defendant William E. Ford is a member of the Board.

16. Defendant Nicoletta Giadrossi is a member of the Board.

17. Defendant Gay Huey Evans is a member of the Board.

18. Defendant Robert P. Kelly is a member of the Board.

19. Defendant Deborah Doyle McWhinney is a member of the Board.

20. Defendant Jean-Paul L. Montupet is a member of the Board.

21. Defendant Deborah Orida is a member of the Board.

22. Defendant James A. Rosenthal is a member of the Board.

23. Defendants identified in ¶¶ 10-22 are referred to herein as the "Individual Defendants."

24. Defendant S&P Global is a New York corporation.

25. Defendant Merger Sub is a Bermuda company.

**SUBSTANTIVE ALLEGATIONS**

26. IHS Markit delivers next-generation information, analytics, and solutions to customers in business, finance, and government.

27. On November 29, 2020, IHS Markit entered into the Merger Agreement, under which IHS Markit's stockholders will receive 0.2838 shares of S&P Global common stock per share.

28. The press release announcing the Proposed Merger provided as follows:

S&P Global (NYSE: SPGI) and IHS Markit (NYSE: INFO) today announced they have entered into a definitive merger agreement to combine in an all-stock transaction which values IHS Markit at an enterprise value of $44 billion, including $4.8 billion of net debt. The transaction brings together two world-class organizations, a unique portfolio of highly complementary assets in attractive markets and cutting-edge innovation and technology capability to accelerate

growth and enhance value creation.

Under the terms of the merger agreement, which has been unanimously approved by the Boards of Directors of both companies, each share of IHS Markit common stock will be exchanged for a fixed ratio of 0.2838 shares of S&P Global common stock. Upon completion of the transaction, current S&P Global shareholders will own approximately 67.75% of the combined company on a fully diluted basis, while IHS Markit shareholders will own approximately 32.25%.

S&P Global and IHS Markit's unique and highly complementary assets will leverage cutting-edge innovation and technology capability, including Kensho and the IHS Markit Data Lake, to enhance the customer value proposition and provide the intelligence customers need to make decisions with conviction. Serving a global customer base across financial information and services, ratings, indices, commodities and energy, and transportation and engineering, the pro forma company will provide differentiated solutions important to the workflows of many of the world's leading companies.

The transaction creates a pro forma company with increased scale, world-class products in core markets and strong joint offerings in high-growth adjacencies, including private assets, small and medium enterprises ("SME"), counterparty risk management, supply chain and trade and alternative data. Combined, the two companies will provide comprehensive solutions across data, platforms, benchmarks and analytics in ESG, climate and energy transition.

Douglas Peterson, President and Chief Executive Officer of S&P Global, will serve as CEO of the combined company. Lance Uggla, Chairman and Chief Executive Officer of IHS Markit, will stay on as a special advisor to the company for one year following closing.

"Through this exciting combination, we are able to better serve our markets and customers by creating new value and insights," said Mr. Peterson. "This merger increases scale while rounding out our combined capabilities, and accelerates and amplifies our ability to deliver customers the essential intelligence needed to make decisions with conviction. We are confident that the strengths of S&P Global and IHS Markit will enable meaningful growth and create attractive value for all stakeholders. We have been impressed by the IHS Markit team and look forward to welcoming the talented IHS Markit employees to S&P Global."

"This transaction is a win for both IHS Markit and S&P Global as we leverage our respective strengths in information, data science, research and benchmarks," said Mr. Uggla. "Our highly complementary products will deliver a broader set of offerings across multiple verticals for the benefit of our customers, employees and shareholders. Our cultures are well aligned, and the combined company will provide greater career opportunities for employees. We look forward to bringing together our teams to realize the potential of this combination."

**Strategic Rationale – Powering the Markets of the Future**

- **Greater scale and business mix**: The transaction creates a combined business with increased scale and world-class products in core market segments. The combined company will have balanced earnings across major industry segments and a resilient portfolio, providing additional financial flexibility to pursue value-creating opportunities.

- **Creates strong offerings in high-growth adjacencies:** The combined company will be differentiated in attractive high-growth adjacencies, including ESG, climate and energy transition, private assets and SME, counterparty risk management, supply chain and trade, and alternative data, which together represent $20 billion of total addressable market, growing at least 10% annually. As part of its ongoing commitment to remain on the cutting edge of technology and innovation, the combined company will continue to deploy well above $1 billion annually on technology.

- **Increased customer value proposition:** The transaction brings together both companies' customer-first cultures and broadens their combined reach across client segments, workflows and use cases. The pro forma organization will serve diverse customer segments across financial services, corporates and governments with differentiated data and intelligence, including the potential to link and create novel insights from new data set combinations. S&P Global and IHS Markit's complementary product portfolios are expected to enable the combined company to serve new and expanded customer use cases in existing and new geographies.

- **Best-in-Class talent:** The combined company will benefit from two best-in-class workforces with deep expertise and strong, complementary cultures focused on serving the global needs of customers. As a single organization, the collective workforce will benefit from expanded opportunities for career development and growth.

**Financial Benefits – Strong Financial Profile and Outlook**

- **Enhanced growth profile:** The pro forma company will have 76% recurring revenue and expects to realize 6.5-8.0% annual organic revenue growth in 2022 and 2023, balanced across major industry segments.

- **Increased profitability:** The combined company will target 200 basis points of annual EBITA margin expansion.

- **Attractive synergy opportunities and earnings accretion:** The transaction is expected to be accretive to earnings by the end of the second full year post-closing. The combined company expects to deliver annual run-rate cost synergies of approximately $480 million, with approximately $390 million of those expected by the end of the second year post-closing, and $350 million in run-rate revenue

5

synergies for an expected total run-rate EBITA impact of approximately $680 million by the end of the fifth full year after closing.

- **Maintains strong balance sheet to pursue further growth:** The combined company is expected to maintain a strong balance sheet and credit profile, with pro forma annual revenue of more than $11.6 billion. S&P Global intends to maintain a prudent and flexible capital structure and will target leverage of 2.0-2.5x EBITA, on an agency-adjusted basis.

- **Enhanced free cash flow generation to support attractive capital return:** The combined company expects to generate annual free cash flow exceeding $5 billion by 2023, with a targeted dividend payout ratio of 20-30% of adjusted diluted EPS and a targeted total capital return of at least 85% of free cash flow between dividends and share repurchases. Both companies expect to maintain their current dividend policies until the close of the transaction.

**Management and Board**
Following closing, the Company will be headquartered in New York with a substantial presence in key global markets across North America, Latin America, EMEA and Asia Pacific.

The combined company is committed to retaining a strong, highly qualified and diverse Board that has the appropriate skills, knowledge and experience to oversee the company and its long-term strategic growth and performance. The combined company's Board of Directors will include the current S&P Global Board of Directors and four directors from the IHS Markit Board. Richard Thornburgh, current Chairman of S&P Global, will serve as Chairman of the combined company.

The leadership team will comprise senior leaders from both organizations. Ewout Steenbergen, Executive Vice President and Chief Financial Officer of S&P Global, will serve as Chief Financial Officer of the combined company.

The transition and integration of the combined company will be led by executives from both S&P Global and IHS Markit. The approach to integration planning will draw from the best practices of both companies to ensure continuity for customers, employees and other stakeholders.

**Timing and Approvals**
The transaction is expected to close in the second half of 2021, subject to, among other things, the expiration or termination of the applicable waiting periods under the Hart-Scott-Rodino Antitrust Improvements Act of 1976, as amended, other antitrust and regulatory approvals, and other customary closing conditions. The transaction requires the approval of shareholders of both S&P Global and IHS Markit and is not subject to any financing conditions.

**Advisors**

Goldman, Sachs & Co. LLC is serving as lead financial advisor to S&P Global. Citi, Credit Suisse and HSBC Securities (USA) Inc. are also serving as financial advisors to S&P Global. Wachtell, Lipton, Rosen & Katz is serving as legal advisor to S&P Global. Boston Consulting Group is serving as strategy advisor and KPMG LLP is serving as transaction advisor to S&P Global. Morgan Stanley & Co. LLC is serving as lead financial advisor to IHS Markit. Barclays, Jefferies LLC and J.P. Morgan Securities LLC are also serving as financial advisors to IHS Markit. Davis Polk & Wardwell LLP is serving as legal advisor to IHS Markit. Oliver Wyman is serving as strategy advisor to IHS Markit.

29. On January 22, 2021, defendants filed the 424B3, which fails to disclose material information regarding the Proposed Merger.

Financial Projections

30. The 424B3 fails to disclose material information regarding the Company's and S&P Global's financial projections. The disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company, and allows shareholders to better understand the financial analyses performed by a company's financial advisor in support of its fairness opinion.

31. The 424B3 fails to disclose the following regarding the S&P Global Projections for S&P Global, the S&P Global Projections for IHS Markit, the S&P Global Projections for the Combined Company, and the IHS Markit Projections for IHS Markit:

(i) The line items used to calculate adjusted EBITDA, adjusted net income attributable to common shareholders, adjusted diluted EPS, and unlevered free cash flow; and

(ii) A reconciliation of the non-GAAP to GAAP metrics.

32. The 424B3 fails to disclose the following regarding the IHS Markit Projections for S&P Global:

(i) The line items used to calculate adjusted EBITDA and unlevered free cash flow; and

7

    (ii)  A reconciliation of the non-GAAP to GAAP metrics.

Financial Analyses

  33.  The 424B3 fails to disclose material information regarding the analyses performed by Morgan Stanley & Co. LLC ("Morgan Stanley"), IHS Markit's financial advisor. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion and the key inputs and range of ultimate values generated by those analyses must be fairly disclosed.

  34.  The 424B3 fails to disclose the following regarding Morgan Stanley's IHS Markit Discounted Cash Flow Analysis and S&P Global Discounted Cash Flow Analysis:

    (i)  The terminal values for HIS Markit and S&P Global;

    (ii)  The inputs and assumptions underlying the discount rates and perpetuity growth rates;

    (iii)  The number of fully diluted outstanding shares of IHS Markit and S&P Global common stock; and

    (iv)  The line items used to calculate unlevered free cash flows.

  35.  The 424B3 fails to disclose the following regarding Morgan Stanley's Analyst Price Targets Analysis:

    (i)  The price targets; and

    (ii)  The sources of the price targets.

  36.  The 424B3 fails to disclose the following regarding Morgan Stanley's Analysis of Pro Forma Financial Effects:

    (i)  The extent to which the Proposed Merger could be dilutive to S&P Global's 2022 pro forma adjusted earnings per share; and

(ii)  The extent to which the Proposed Merger could be accretive to S&P Global's 2023 and 2024 pro forma adjusted earnings per share.

37. The 424B3 fails to disclose Morgan Stanley's financial analyses of the range of premiums paid in certain stock for stock transactions.

Potential Conflicts of Interest of Morgan Stanley

38. The 424B3 fails to disclose material information regarding Morgan Stanley's potential conflicts of interest. Full disclosure of investment banker compensation and all potential conflicts is required due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives.

39. The 424B3 fails to disclose the timing and nature of the previous services Morgan Stanley provided to the parties to the Merger Agreement.

40. The 424B3 fails to disclose the amount of compensation Morgan Stanley has received or will receive for acting as a lender to IHS Markit and S&P Global.

41. The 424B3 fails to disclose when and whether Morgan Stanley will be paid an additional discretionary fee in connection with the Proposed Merger.

42. If disclosed, the omitted information would significantly alter the total mix of information available to IHS Markit's stockholders.

## COUNT I

**Claim Against the Individual Defendants and IHS Markit for Violation of Section 14(a) of the Exchange Act and Rule 14a-9**

43. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

44. The Individual Defendants disseminated the false and misleading 424B3, which contained statements that, in violation of Section 14(a) of the Exchange Act and Rule 14a-9, in

light of the circumstances under which they were made, failed to state material facts necessary to make the statements therein not materially false or misleading.

45. IHS Markit is liable as the issuer of these statements.

46. The 424B3 was prepared, reviewed, and/or disseminated by the Individual Defendants.

47. Due to their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the 424B3.

48. The Individual Defendants were at least negligent in filing the 424B3 with these materially false and misleading statements.

49. The omissions and false and misleading statements in the 424B3 are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Merger.

50. A reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the 424B3 and in other information reasonably available to stockholders.

51. The 424B3 is an essential link in causing plaintiff to approve the Proposed Merger.

52. Accordingly, defendants violated Section 14(a) of the Exchange Act and Rule 14a-9.

53. Plaintiff is threatened with irreparable harm.

## COUNT II

**Claim Against the Individual Defendants and S&P Global for Violation of Section 20(a) of the Exchange Act**

54. Plaintiff repeats and realleges the above-referenced allegations as if fully set forth herein.

55. The Individual Defendants and S&P Global acted as controlling persons of IHS Markit within the meaning of Section 20(a) of the Exchange Act as alleged herein.

56. Due to their positions as officers and/or Board members of IHS Markit and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the 424B3, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

57. Each of the Individual Defendants and S&P Global was provided with or had unlimited access to copies of the 424B3 alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

58. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, thus, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.

59. The 424B3 contains the unanimous recommendation of the Individual Defendants to approve the Proposed Merger. They were thus directly involved in the making of the 424B3.

60. S&P Global also had supervisory control over the composition of the 424B3 and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the 424B3.

61. Accordingly, the Individual Defendants and S&P Global violated Section 20(a) of the Exchange Act.

62. The Individual Defendants and S&P Global had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the Exchange Act and Rule 14a-9, by their acts and omissions as alleged herein.

63. Due to their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act.

64. Plaintiff is threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief against defendants as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from consummating the Proposed Merger;

B. In the event defendants consummate the Proposed Merger, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a 424B3 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as Rule 14a-9;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff requests a trial by jury on all issues so triable.

Dated:  February 24, 2021 **GRABAR LAW OFFICE**

By: _Joshua H. Grabar_
Joshua H. Grabar (#82525)
One Liberty Place
1650 Market Street, Suite 3600
Philadelphia, PA 19103
(267) 507-6085
jgrabar@grabarlaw.com

*Counsel for Plaintiff*